IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| RAQUEL ALICIA HERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | NO**.** 1:23-CV-120 |

## **REPORT AND RECOMMENDATION OF**
## **UNITED STATES MAGISTRATE JUDGE**

The Plaintiff, Raquel Alicia Hernandez ("Hernandez") requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability insurance benefits under Title II of the Social Security Act. This action is before the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

## **II.   BACKGROUND**

### A.   Procedural History

Hernandez protectively filed for Disability Income Benefits and Supplemental Security Income on November 6, 2019, alleging disability beginning January 2, 2018, due to gastroparesis, severe postpartum depression, hypotension, and diabetes type 2. (Tr. 257.) The Commissioner denied her claims initially and on reconsideration. (Tr. 69-126.) Hernandez,

---

[1]   General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B)(2009) and Loc. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

represented by her attorney, and a vocational expert (VE) testified at a hearing on June 1, 2022. (Tr. 42-68.) The ALJ issued a decision on June 21, 2022, finding her not disabled.[2] (Tr. 17-41.) The Appeals Council denied Hernandez's request for review on March 10, 2022. (Tr. 1-6). She now seeks judicial review pursuant to 42 U.S.C. § 405(g).

### B.  Factual History

Hernandez was born on July 19, 1980, which is defined as a younger individual. (Tr. 34.) She has a ninth grade education and past relevant work as a home attendant, child monitor, and general merchandise sales monitor. (Tr. 33, 47.)

### C.  Administrative Decision and Appeal

As a threshold matter, the ALJ determined that Hernandez last met the insured status requirements of the Act on December 31, 2022. (Tr. 23.) He utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying her application.[3]

At Step One, the ALJ found that Hernandez had not engaged in substantial gainful activity since January 2, 2018, the alleged onset date. (Tr. 23.) At step two, he found that she had severe impairments of gastroparesis, gastritis, irritable bowel syndrome (IBS), fibromyalgia, post-traumatic stress disorder (PTSD), major depressive disorder, anxiety, panic disorder with agoraphobia, somatic symptom disorder, sedative, hypnotic or anxiolytic abuse, and drug abuse.

---

[2]  Hernandez claims that her hearing was on June 1, 2022, and the ALJ rendered his decision on "the same day that the administrative hearing was held." (Dkt. #12, pg. 1.) Her statement is incorrect.

[3]  To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps. *See* 20 C.F.R. § 404.1520(a)(4); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do his "past relevant work," and (5) whether the impairment prevents the claimant

(*Id.*) He considered the following and found them non-severe impairments: hypotension, tachycardia, headaches, otitis media, hiatal hernia, and diabetes mellitus with neuropathy. (Tr. 23.) At step three, the ALJ found that she had no impairment or combination of impairments that met or medically equaled a listing for presumptive disability, including Listings 5.06 (Inflammatory Bowel Disease), 14.09 (Rheumatoid Arthritis), 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.15 (Trauma and Stressor-Related Disorders. (Tr. 24-26.)

The ALJ next determined that Hernandez had the physical residual functional capacity ("RFC") for

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can occasionally climb ropes, ladders, or scaffolding. The claimant requires ready access to a restroom in the workplace (close proximity such as in an office setting). Mentally, the claimant is limited to simple, routine, repetitive tasks, requiring no more than 1, 2 or 3 step instructions, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general relatively few workplace changes in a routine work setting. The claimant is limited to occasional interaction with the supervisors, co-workers, and the general public.

(Tr. 26.)

At step four, the ALJ found that Hernandez could not perform her past relevant work. (Tr. 33). At step five, he relied on the VE's testimony to conclude that Hernandez could perform other work available in the national economy, such as Housekeeping/Cleaner, Collator, and Mail Clerk, and therefore found her not disabled from her alleged onset date of January 1, 2018, to June 21, 2022. (Tr. 34-35.)

---

from doing any relevant work. *Id*.

## II. JUDICIAL REVIEW

This court reviews the Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Courts may not re-weigh evidence, try issues de novo, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).

## III. POINTS OF ERROR AND RESPONSE

Hernandez raises two issues on appeal: whether the ALJ properly determined she did not satisfy Listing 12.04 (depressive, bipolar, and related disorders), and whether the ALJ properly evaluated the medical opinion evidence and all of her impairments (especially those relating to standing/walking and gastric symptoms) in assessing her RFC such that substantial evidence

4

supports the ALJ's RFC assessment. (Dkt. #12, p. 3, 4-25.) Although Hernandez argues that the ALJ committed legal error, the basis for her appeal challenges the sufficiency of the evidence supporting the RFC. The Commissioner responds that contrary to her allegations, the ALJ properly addressed the medical opinion evidence, Hernandez's subjective reports, and the SAMCs' expert medical findings in assigning a *more* restrictive RFC than the SAMCs assessed, and that the medical evidence supports the ALJ's findings.

## IV. RESIDUAL FUNCTIONAL CAPACITY

The regulations state that RFC means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012). Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"). RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d).

A claimant's RFC is assessed at steps four and five of the sequential evaluation process. At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed. Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five). SSR 96-8p. An ALJ's RFC assessment forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's impairments and functional

limitations can perform. *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p. Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to supervision). *Id.* In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In assessing Hernandez's mental RFC, the ALJ applied the "special technique" used to evaluate the severity of mental impairments. (Tr. 24-26); s*ee Garcia v. Berryhill*, 880 F.3d 700, 705 (5th Cir. 2018); 20 C.F.R. §§ 404.1520a, 404.1521. The special technique requires the ALJ to first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a claimant has a medically determinable mental impairment, the ALJ must specify the symptoms, signs and laboratory

6

findings that substantiate the presence of the impairment and document its findings. (*Id.*) Next, the ALJ rates the degree of functional limitation in four broad areas of mental functioning:

- Ability to understand, remember, or apply information;
- Interact with others;
- Concentrate, persist, or maintain pace; and
- Adapt or manage oneself.

(*Id.*) The regulations instruct that a five-point rating scale is used to evaluate the effects of a claimant's mental disorder on each of the four areas of mental functioning consisting of none, mild, moderate, marked, and extreme limitation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00F.

Hernandez's first point of error challenges the ALJ's mental RFC determination and her second point of error claims the ALJ erred in determining her physical RFC assessment as it relates to her ability to stand, walk, and balance (without a need for unscheduled restroom breaks).

## V.   HARMLESS ERROR

"An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster*, 19 F.4th at 718 (quoting *Ripley*, 67 F.3d 552, 557); *see also Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. 2023). Even assuming *arguendo* that the ALJ erred in assessing RFC, remand is only appropriate if that error resulted in prejudice to the plaintiff.[4] *See Miller*, 2023 WL 234773 at *4 ("remand is warranted only if the ALJ's error was harmful"); *Walker v. Kijakazi*, No. 23-60116, 2023 WL 7443302, at *4 (5th Cir. Nov. 9, 2023) ("We need not decide whether . . . the ALJ inadequately discussed the 'supportability' and 'consistency' factors . . .

---

[4] "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

7

because [the Plaintiff] fails to show that any error prejudiced him.") (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009); *Williams v. Comm'r of Soc. Sec. Admin.*, No. 5:23CV68-RWS-JBB, 2024 WL 2807937, at *15 (E.D. Tex. May 9, 2024), *R & R adopted*, No. 5:23-CV-68-RWS-JBB, 2024 WL 2805632 (E.D. Tex. May 31, 2024).

## VI. DOES SUBSTANTIAL EVIDENCE SUPPORT THE *MENTAL* RFC?

The ALJ found that Hernandez suffers from severe post-traumatic stress disorder (PTSD), major depression, anxiety, panic disorder with agoraphobia, and somatic symptoms disorder, among other impairments. (Tr. 23.) After considering the evidence, the ALJ found that Hernandez had "no more than *moderate* limitation" in each of the four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself, which resulted in the ALJ finding she did not satisfy Listing 12.04. (Tr. 24-25); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(2)(b). Hernandez disagrees with the ALJ's "no more than moderate" findings in three of the domains and argues that, based on subjective evidence, she has *marked*, if not *extreme*, limitations in those domains. (Dkt. #12, p. 5-16.) She relies on the findings of a consulting psychologist, Dr. Corrine Alvarez-Sanders, who opined that Hernandez's symptoms will "significantly interfere in her ability to consistently perform tasks in a work environment" and that she has severe difficulty dealing with everyday pressures and stress in a work environment. (Tr. 809.) Hernandez challenges the ALJ's reliance on the state agency medical consultants' ("SAMC") opinions because they were not based on the complete record—a fact that was mentioned by the ALJ in his consideration of the evidence.[5]

---

[5]      State agency medical consultants are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1);

Instead of adopting Dr. Alvarez-Sanders' opinion, the ALJ found it not persuasive because it is "not wholly consistent with the objective findings reported by the claimant's nurse practitioner with Tri-County Behavioral Health, which noted good/intact memory, attention and concentration, insight and judgment as well as being fully oriented." (Tr. 1076-1086.) The ALJ also discussed the evidence he relied on in assessing the following individual abilities.

A. <u>Understanding, Remembering, or Applying Information</u>

In weighing her ability to understand, remember, or applying information, the ALJ found no more than a moderate limitation citing to Hernandez's most recent mental health treatment record noting that her memory was good/intact and that she was fully oriented (Tr. 25, citing 1076-86). Hernandez does not challenge this finding.

B. <u>Interacting with Others</u>

The Commissioner defines "interacting with others" as the ability to:

> relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

Listing 12.00E2. In making this finding, the ALJ considered Hernandez's testimony that she did not like to interact with others in public and kept her head down but noted that she did not mention difficulty interacting with family. (Tr. 25.) He also cited medical records indicating that she would cry at times during interviews. (*Id.*)

---

Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *3. The Government correctly notes that there is no authority that requires a SAMC's opinion be based on the record for the ALJ to find them generally persuasive because "there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in

9

C.     Concentrating, Persisting, and Maintaining Pace

The Listings define concentration, persistence, and pace as the ability to:

> focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

Listing 12.00E3. In making this finding, the ALJ noted that Hernandez's most recent mental health treatment records noted that her attention and concentration were good/intact. (Tr. 28) (citing 332-39, 341-346, 1076-86).

Other medical evidence, discussed by the ALJ in his RFC assessment, supports the finding that Hernanez is *moderately* (not marked) limited in this area. As the ALJ noted, Hernandez underwent a consultative examination with Hildy E. Dinkins, Psy.D on March 30, 2018. (Tr. 29.) Dr. Dinkins noted that Hernandez was fully oriented, and her memory and concentration were intact, her ability for abstraction was fair, and that she exhibited adequate judgment and limited insight. (Tr. 29, citing Tr. 341-344) ("She sustained attention without difficulty.") Although Dr. Dinkins' report notes that Hernandez's interactions were not completely age-appropriate, she found that Hernandez could understand, remember, and apply information and sustain attention without difficulty. (Tr. 31-32) (citing 341-46).

The ALJ found Dr. Dinkins' opinion "only somewhat persuasive" based on his review of the evidence, including routine treatment records from Tri-County Behavioral Health and her subjective reports. In November 2019, medical records state that Hernandez maintained

---

reliance on it." (Dkt. #13, p. 11) (citing *Chandler v. Comm'r of SSA*, 667 F.3d 356, 361 (3d Cir. 2011).

attention/concentration "fairly well," and her recent and remote memory were intact despite her opportunistic use of cannabis (of which she had no plans of quitting). (Tr. 551). The ALJ also mentioned medical records from Border Region Behavioral Health Center that document Hernandez's hospitalization for worsening depression. (Tr. 29) (citing Tr. 694-738). These records state:

> she was oriented x 4, to person, place, time and situation. She has good memory for recent and remote events. She presents with a logical and coherent thought process. She appeared to portray good judgment and insight. She does not appear to respond to internal stimuli or appear delusional during the assessment. She denies audio/visual hallucinations.

(Tr. 735). Similarly, State Agency Medical Consultants ("SAMCs") Forgus and Plasay both found moderate limitation in this domain. (Tr. 76- 77, 92, 107).

    D.    <u>Adapting and Managing Oneself</u>

The Listings define adapting and managing oneself as the ability to:

> regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions

Listing 12.00E4. In this area, the ALJ found no more than moderate limitation. (Tr. 25.) He noted that she was previously hospitalized in a mental health facility from October 24-29, 2019, and that it was done on a voluntary basis. (Tr. 24, 29) (citing Tr. 694 (stating that she walked into a behavioral center to seek help)). The ALJ also considered that she was hospitalized from November 3-8, due to vomiting and suicidal ideations and that she tested positive for acute intoxication. (Tr. 29-30) (citing 635-636). Records from this hospitalization indicate she was

11

undergoing drug detox for "sedative, hypnotic, or anxiolytic abuse." (Tr. 635, 639, 654-55, 880.)

  E.  <u>Substantial evidence supports the mental RFC</u>

The undersigned finds that the ALJ relied on the state agency consultants' findings and recent medical treatment notes to ultimately determine that Hernandez did not satisfy Listing 12.04. However, even assuming the ALJ erred at Step Three, remand would be necessary only if the claimant's substantial rights have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Arnett v. Kijakazi,* No. 1:21-CV-1187-RP, 2023 WL 3035452, at *5 (W.D. Tex. Jan. 26, 2023), *R & R adopted sub nom. Arnett v. Comm'r of Soc. Sec.,* No. 1:21-CV-1187-RP, 2023 WL 3035422 (W.D. Tex. Feb. 10, 2023).

Although Hernandez argues that the consultants' reports are not based on the full medical record, as the Commissioner correctly notes, there is always some time lapse between the SAMC's report and the ALJ hearing and decision, and the regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. (Dkt. #13, p. 11) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Only where "additional medical evidence is received that *in the opinion of the [ALJ]* ... may change the State

agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (emphasis added). The ALJ reached no such conclusion in this case.

The claimant has the burden of proving that her impairment or combination of impairments meets a listing at Step Three. *Selders*, 914 F.2d at 619. "For a claimant to show that his impairment matches [or meets] a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* Hernandez has failed to prove that substantial evidence supports a more limited mental RFC finding.

## VII.   DOES SUBSTANTIAL EVIDENCE SUPPORT THE *PHYSICAL* RFC DETERMINATION?

Regarding her physical abilities, the ALJ determined Hernandez has the RFC to

> Perform light work . . . except [she] can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. [She] can occasionally climb ropes, ladders, or scaffolding. [She] requires ready access to a restroom in the workplace (close proximity such as in an office setting).

(Tr. 26.) Hernandez next argues that the ALJ committed error in not including hypotension and tachycardia as severe impairments at step two, which she alleges causes dizziness and fatigue. She claims this mistake resulted in a physical RFC unsupported by the evidence and fails to account for all of her impairments, even those that are not severe. She also claims that the ALJ's failure to include a requirement that she have unscheduled breaks due to gastroenteritis, gastritis, irritable bowel disease, resulting in an unsupported RFC.

### A.   Walking and Standing

The ALJ explained his reason to exclude hypotension and tachycardia, *inter alia*, at step

two:

> …the record showed little evidence of subjective complaints and no evidence of complications related to these conditions (Exhibit 4F, 11F/4, 15F/2). Moreover, the record showed control and/or management of these conditions with routine treatment and/or medications. As such, the undersigned finds there was no objective medical evidence in the record that the above impairments have caused the claimant any functional limitations.

(Tr. 23.) Moreover, the ALJ stated that he considered the limiting effects of all Hernandez's impairments, "even though that were not severe." (Tr. 22-23) (citing 20 C.F.R. §§ 404.1545(3), 416.945(e)).

Hernandez relies on subjective complaints to challenge the RFC, which she claims was incomplete because it did not account for weakness and/or dizziness upon standing—limitations she alleges are caused by nonsevere hypotension. However, as the ALJ explained, a few months after she reported being restrained to a wheelchair, she showed no gait impairment during her consultative exam. (Tr. 341.) Moreover, the medical record contains objective medical evidence that she presented with normal gait on several occasions. (Tr. 340) (normal gait, no muscle wasting); (Tr. 785) (normal gait). In December 2020, her doctor even advised her to do aerobic exercise at a minimum of 30 minutes for a minimum of 5 days a week, to walk 30 minutes 5 days a week, to do water-based exercise (swimming/water aerobics) for 30 minutes 5 days per week, and to take regular daily walks. (Tr. 33, 1029.) The SAMCs also assessed a range of light work with walking/standing 6 hours out of an 8-hour workday and unlimited or frequent balancing. (Tr. 70-79, 105-11.) Accordingly, the undersigned finds that the evidence supports the RFC finding as to Hernandez's ability to stand and walk.

### B.   Vomiting and other gastric impairments

Hernandez also claims the ALJ erred in not finding that she requires unscheduled breaks

14

due to symptoms (uncontrolled vomiting) related to her gastritis and gastroparesis. (Dkt. #12, p. 22.) At her administrative hearing, Hernandez testified that she vomits two to three days per week. (Tr. 53-54.) The ALJ found her statements not entirely consistent with the medical evidence and not supported by the evidence to the extent alleged. (Tr. 27-28.) The ALJ also carefully detailed the medical evidence relating to her gastric symptoms:

> [The SAMCs] observed that [Hernandez] had a treatment history for conditions resulting in nausea, vomiting, dizziness, and weight loss. While the claimant's digestive diagnoses were generally well supported, the Agency review of the full record was limited as additional evidence was received at the hearing level. These updates support these prior findings except that they also support more precise non-exertional limitations as assessed herein. Most notably, the claimant's gastritis, Gastroparesis, and IBS, with symptoms of stomach discomfort, diarrhea, nausea, vomiting, weight loss and/or frequent use to the restroom.

(Tr. 33) (internal citations omitted). While she reported frequent vomiting to her medical providers (Tr. 499, 487), she also said that prescription medicine helped relieve the symptoms. (Tr. 499, 540, 1025.) Moreover, the objective medical evidence shows she was diagnosed with mild inactive gastritis that was routinely controlled with medication. (Tr. 415, 421, 540 (medical record dated January 17, 2020, states since medication increased, no flare-ups); Tr. 919 (August 2018 upper GI image shows only mild gastroesophageal reflux, otherwise unremarkable); Tr. 935 (medical record dated July 13, 2018, states stomach biopsy shows only mild chronic inactive gastritis); Tr. 949 (telemed doctor prescribed medication for nausea with vomiting); Tr. 951 (medical record dated February 1, 2021, states that patient is not taking prescription medication for gastroparesis, doctor prescribed medication for nausea); Tr. 1025 December 2020 medical record states she ran out of medication "hence her symptoms worsened"); Tr. 1030 (admits ran out of meds, forgot to pick up)).

Hernandez fails to establish that her gastric symptoms are not controlled by medication. "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987).

Hernandez argues that "had [her] need for unscheduled breaks between five to ten times per day been included in the ALJ's RFC finding and the hypothetical questions presented to vocational expert, *it is likely* that the ALJ would have found that there is no work in the national economy that she can perform." (Dkt. #12, p. 23.) However, the ALJ considered gastroenteritis, gastritis, and irritable bowel disease and did not include a requirement for unscheduled breaks. (Tr. 71, 87, 109.) Importantly, there is no objective medical evidence or medical opinion evidence to support her alleged need for unscheduled breaks. Accordingly, the undersigned finds that the ALJ's RFC assessment, which did not include a need for unscheduled breaks but *did* include a need for ready access to a bathroom, is supported by substantial evidence.

## VIII.  CONCLUSION

"The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible." *Jones v. Berryhill*, No. CV 17-5324, 2018 WL 1325851, at *2 (E.D. La.  2018). That means that even if the court might reach a different conclusion, it must uphold the ALJ's opinion so long as it is supported by substantial evidence. *See Lacour v. Comm'r of Soc. Sec*., No. 4:22-CV-01645, 2023 WL 4747389, at *3 (S.D. Tex. July 25, 2023). As explained in the foregoing sections, the undersigned concludes that substantial evidence supports the ALJ's findings. Consequently, the

administrative decision should be affirmed.

## IX. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 26th day of August, 2024.

_____
Zack Hawthorn
United States Magistrate Judge

17